**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JACQUELINE SPRATT, | |
| Plaintiff, | Case No. 18-cv-6573 |
| v. | |
| BELLWOOD PUBLIC LIBRARY, | **Honorable Sharon Johnson Coleman** |
| Defendant. | Magistrate Judge Sheila M. Finnegan |

**FIRST AMENDED COMPLAINT**

Plaintiff, Jacqueline Spratt ("Spratt"), by and through her attorneys, Caffarelli & Associates, Ltd., for her First Amended Complaint against Bellwood Public Library, states as follows:

**NATURE OF ACTION**

1.     This is an action for damages and injunctive relief against Defendant Bellwood Public Library ("Library" or "Bellwood") for unlawful retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623, *et seq.*, as amended ("ADEA"), and unlawful retaliation in violation of the Illinois Whistleblower Act ("IWA"), 740 Ill. Comp. Stat. § 174/1 *et seq*.

**JURISDICTION AND VENUE**

2.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 626 (right to civil action under ADEA).  This Court has supplemental jurisdiction of Plaintiff's Illinois state law claims pursuant to 28 U.S.C. § 1367.

3.     Defendant is located in Cook County, Illinois.  Accordingly, venue in the Eastern Division of the U.S. District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

4.  On June 15, 2017, Plaintiff filed a charge of discrimination with the EEOC, alleging discrimination in violation of the ADEA.  On May 4, 2018, Spratt filed an Amended Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission (the "EEOC"), substantially describing the facts regarding recited herein, alleging unlawful retaliation in violation of the ADEA.

5.  On August 20, 2018, the EEOC issued a Dismissal and Notice of Rights, a copy of which is attached as Exhibit A.  This Complaint was filed within ninety days of Plaintiff's receipt of the Dismissal and Notice of Rights from the EEOC.

6.  Plaintiff has satisfied all conditions precedent to pursuing her claim under the ADEA.

**PARTIES**

7.  Defendant employed Ms. Spratt from on or about September 23, 1993 through on or about April 2, 2018.

8.  Plaintiff was employed as the Library Director for Defendant from 2014 through the end of her employment.

9.  At all times relevant, Plaintiff was an "employee" of Defendant within the meaning 29 U.S.C. § 630(f).

10. At all times relevant, Plaintiff was an "employee" as defined by 740 Ill. Comp. Stat. § 174/5.

11. Defendant is a public library operated in the village of Bellwood, Illinois.

12. At all times relevant, Defendant was an "employer" within the meaning of 29 U.S.C. § 630(b).

2

13. At all times relevant, Defendant was an "employer" as defined by 740 Ill. Comp. Stat. § 174/5.

14. Oversight authority and control of the Library is entrusted to an elected Board of Trustees as defined by 75 Ill. Comp. Stat. § 5/1, *et seq*.

## FACTUAL ALLEGATIONS

15. Ms. Spratt worked for the Library from on or about September 23, 1993 through April 2, 2018.

16. Throughout her employment with Defendant, Ms. Spratt performed her job satisfactorily.

17. Beginning in 2014, Ms. Spratt was selected to serve as the Library Director for Defendant. Prior to becoming Library Director, Ms. Spratt had served as the Library's Head of Circulation.

18. As Library Director, Ms. Spratt reported to Defendant's Board of Trustees ("Board").

19. In or about January of 2015, Mary Clements ("Clements") became the Board president.

20. On or about April 15, 2015, the Board held a special meeting. At the special meeting, Chuck Baxter ("Baxter") announced that he was the Public Affairs Consultant for the new majority of board members as of the April 7, 2015 election.

21. During the meeting, the Board tried to assume control of hiring for the Library.

22. Hiring and firing personnel was within Ms. Spratt's discretion pursuant to the Illinois Local Library Act. *See* 75 Ill. Comp. Stat. § 5/4-7(7).

23.     Following this meeting, and throughout the duration of Ms. Spratt's employment, the Board consistently tried to take control of the hiring process for the Library.

24.     Controlling the hiring for the Library would allow the Board greater access to the Library's resources, to engage in nepotistic hires irrespective of candidate qualifications, and provide jobs in return for favors.

25.     Also following this meeting, Baxter regular attended Board meetings and would provide instruction to Board members during the meetings via written notes, hand signals, and leaving the room to confer.

26.     On two occasions during 2015, Ms. Spratt contacted the Illinois State Library and reported that the Board was acting in violation of the Illinois Local Library Act by trying to assume control of hiring.  However, Ms. Spratt was told that the Illinois State Library did not have jurisdiction over the actions of the Board.

27.     On three occasions throughout 2015 and 2016, including on February 17, 2016, Ms. Spratt contacted Reaching Across Illinois Library Systems ("RAILS").  Ms. Spratt reported to RAILS that the Board was trying to hire Library staff members and asked for help in how to deal with the problem.  RAILS shared Ms. Spratt's concerns and sent her a copy of the Illinois statute and materials to use in trying to convince the Board that they were stepping outside their role in attempting to control hiring.

28.     At a Board meeting on March 9, 2016, Ms. Spratt shared the Illinois Local Library Act with Defendant to show that the Board was acting outside their scope of lawful authority by trying to take control of the Library hiring.

29.   In or about March of 2016, Ms. Spratt sought approval from the Board to remodel two public restrooms and masonry work done on the Library's storage building.  The Board agreed, but wanted to go farther and approved remodeling for two additional bathrooms.

30.   Ms. Spratt insisted they needed to solicit bids for the remodeling work.

31.   Instead, the Board sought to hire Myron Adams of DK Environmental Services as a 'consultant' to oversee the project.  Mr. Adams failed to present any proposal, references, or costs.  Mr. Adams proposed additional costly and unnecessary actions.

32.   Ms. Spratt opposed hiring the consultant because it was an unnecessary cost and the Board had not even considered other bids.  Ms. Spratt insisted that the Library needed to obtain bids for the project prior to hiring a consultant.

33.   The Illinois Local Library Act provides that the Board shall advertise for bids and award the contract to the lowest responsible bidder when the cost for constructions, repair, remodeling, or improvement will cost in excess of $25,000.  75 Ill. Comp. Stat. § 5/5-5.

34.   The bathroom remodeling ultimately cost approximately $50,000.

35.   At a board meeting on May 11, 2016, Ms. Spratt presented the Board with three contractor bids for the remodeling project.  The Board instructed Ms. Spratt to arrange for the contractors to give presentations at the June 8, 2016 board meeting.  However, on June 3, 2016, Clements removed the contractors' presentations from the agenda.

36.   On or about May 16, 2016, the Board moved to conduct an evaluation of Ms. Spratt. However, the evaluation was never completed.

37.   On or about June 1, 2016, the Board held another special meeting and closed session.  Ms. Spratt was not informed of the meeting and only learned of it because a library patron brought it to her attention.

38.    At the June 1 meeting, Mr. Stuttley from Stuttley Group, LLC gave a presentation about potentially representing the Board to respond to a complaint that the Board had been operating in violation of the Illinois Open Meetings Act.  Ms. Spratt then inquired about the legal fees and was told he billed at a rate of $495 per hour, but could be flexible.  No specific fee was quoted for the Library.  The Board did not seek or allow other bids.

39.    On June 2, 2016, Ms. Spratt sent Clements a copy of the June Board Agenda for the scheduled meeting of June 8, 2016.

40.    On June 3, 2016, Clements directed Ms. Spratt to remove reference to the attorneys' fees.  Ms. Spratt had researched attorneys' fees and found that most attorneys who worked with libraries billed around $195.00 per hour, which she told Clements.  Clements warned Ms. Spratt that she would be insubordinate if she discussed the attorneys' fees at the public board meeting.

41.    The Stuttley Group ultimately billed the Library for approximately $11,017.50, which Ms. Spratt refused to pay without Board authorization.

42.    Throughout 2016, the Board consistently obstructed Ms. Spratt's ability to perform her job and criticized her both privately and publicly.

43.    At public meetings, the Board repeatedly attempted to shift all blame for public complaints on to Ms. Spratt.

44.    On March 3, 2017, Board member J.B. Carr ("Carr") tendered her resignation from the Board at a special meeting ("March 3rd Meeting").

45.    Public notification of the March 3rd Meeting was posted less than 48 hours before the meeting was to take place, in violation of the Open Meetings Act, 5 Ill. Comp. Stat. § 120/2.02, *et seq*.

46.     Following announcement of her resignation, Carr, along with Board Members Clements, Regina Greene, and Sharon Tharpe, voted to appoint Gwendolyn Reese to Carr's vacant seat.

47.     Ms. Spratt was also in attendance at the March 3rd Meeting and opposed the Board's unlawful actions in trying to appoint Reese.  Ms. Spratt showed a Board attorney a copy of the statute in her effort to establish that the Board members were acting in violation of law and asked the attorney to uphold the law.

48.     Ms. Spratt opposed the action and declared it unlawful to the Board attorney and to the Board members because (a) the seat had to be declared vacant before it could be filled and (b) Tharpe was not a valid member, consequently the Board lacked a quorum.

49.     Ms. Spratt repeatedly refused to recognize Reese as a valid Board Member due to her unlawful appointment.

50.     Similarly, Ms. Spratt refused to recognize Tharpe as a valid Board Member because it was unlawful for her to hold the position.

51.     In 2002, Tharpe had been convicted in Cook County of arson with the intent to defraud an insurance company.  Tharpe was sentenced to 24 months of probation for the felony conviction.

52.     In Illinois, a person is ineligible to hold elected municipal office if she "has been convicted in any court…of any infamous crime, bribery, perjury, or other felony."  65 Ill. Comp. Stat. § 5/3.1-10-5(b).

53.     In addition, in 2017, despite ostensibly serving as a member of the Board for the Bellwood Public Library, Tharpe's official residence was in Chicago.

54.  In Illinois, "[a] person is not eligible an elective municipal office unless that person…has resided in the municipality at least one year preceding the election or appointment…" 65 Ill. Comp. Stat. § 5/3.1-10-5(b).

55.  Prior to the March 3rd Meeting, Ms. Spratt called Tharpe and informed her that she could not be on the Board because she was a convicted felon.

56.  Following the March 3rd Meeting, Ms. Spratt emailed Mr. Stuttley to inform him that Tharpe, by law, could not serve as a member of the Board because of her conviction.  Ms. Spratt did not receive a response.

57.  Defendant also retained the Del Galdo Law Group, which billed the Library approximately $13,844.25.  However, the group was retained at a meeting where Tharpe and Reese were required for a quorum.  Ms. Spratt refused to recognize the meeting or its results because Tharpe and Reese were not lawful members of the Board.

58.  In or about March 2017, a complaint was filed with the Office of the Attorney General's Public Access Counselor regarding Defendant's attempt to unlawfully appoint Reese to the Board.

59.  In or about April of 2017, two members of the Illinois Attorney General's Office contacted Plaintiff regarding the complaint.  Ms. Spratt answered their questions and reported her concerns regarding Defendant's violations of the Open Meetings Act and the unlawful appointment of Reese.

60.  Throughout March, April, May, and June of 2017, Clements continued to harass Ms. Spratt and undermine her ability to perform her duties.

61.  On June 15, 2017, Plaintiff filed a Charge of Discrimination with the EEOC against Defendant.

62.   On June 15, 2017, Ms. Spratt emailed the Board to inform them that she had filed a complaint with the EEOC and attached a copy of the filed Charge of Discrimination.

63.   On June 29, 2017, several members of the Board convened a "special meeting" with only four of its members, including Clements, Janice English, Tharpe, and Reese.  These four Board members voted to place Ms. Spratt on administrative leave in order to investigate her and determine if they would discipline or terminate her.

64.   At the same meeting, these four Board members also voted to revoke Ms. Spratt's authority to fill current vacancies and future positions at the Library.

65.   In violation of the Open Meetings Act, 5 Ill. Comp. Stat. § 120/2.02, *et seq.,* Clements posted notice of the June 29, 2017 meeting less 48 hours before the meeting was to be held.

66.   On June 30, 2017, Mr. Stuttley informed Ms. Spratt that she had been placed on an indefinite administrative leave, pending investigation to determine if disciplinary action against her was warranted.  She was further advised that she could not go to the Library while on leave.

67.   Ms. Spratt refused to recognize the vote to place her on administrative leave or revoke her hiring authority because the vote was unlawful and void.

68.   On or about July 1, 2017, Ms. Spratt learned that Clements and Baxter had hired a locksmith to change the locks on Ms. Spratt's office in order to keep her out.

69.   Ms. Spratt went to the Library to try to stop Clements from changing the lock. Clements then called the police to report Ms. Spratt.  Ms. Spratt explained to the police that the meeting held on June 29, 2017 was unlawful and, consequently, Clements had no right to bar her from the premises.  The Police prohibited Clements and Baxter from changing the locks and stated that they were required to have a court order to do so.

70. On or about July 3, 2017, Clements, along with several other Board members, filed for a temporary restraining order ("TRO") against Ms. Spratt to prohibit her from going in to work at the Library.

71. The Court initially entered the TRO, but then rescinded and struck it in its entirety it on July 7, 2017. In overturning the TRO, the court found that Tharpe's seat on the Board was invalid; therefore, the decisions made at the June 29th meeting were made without a quorum and lacked authority.

72. On multiple occasions throughout 2017, Ms. Spratt reported the Board's violations of the Open Meetings Act, Local Library Act, and attempts to misappropriate funds to other library directors throughout Illinois.

73. On or about August 1, 2017, Spratt refused to issue payment on invoices from Stuttley Group and Del Galdo Group because they were retained without a quorum and relying on the support of Tharpe, whose position on the Board was unlawful.

74. On or about August 2, 2017, Clements ordered Spratt to pay the Stuttley and Del Galdo invoices, which Spratt again refused to do without a lawful vote from the Board.

75. On or about September 12, 2017, Smith was appointed the new Board President.

76. On or about September 14, 2017, then-Board President Smith told Ms. Spratt that it was a problem that Spratt had not yet obtained a Master of Library Science ("MLS") degree. At the time Ms. Spratt was hired to be the Library Director, it had been discussed that she would work to obtain her MLS degree. Ms. Spratt explained to Smith that the additional burdens and time-commitments she had been forced to expend in dealing with the Board's unlawful and unethical actions over the preceding years had made it infeasible for her to complete the degree in that time. Smith informed Spratt that the issue would be addressed in future Board meetings.

77.    No one had discussed Spratt obtaining an MLS degree once she had been hired to the Library Director position.

78.    After becoming Board President, Smith began calling Spratt on a near daily basis, including after work hours and on the weekends.  Smith began to insert herself into the day-to-day operations of the Library, including overseeing and directing the work of Library staff. Similar to prior Board President Clements, Smith began ordering Spratt to take actions without first consulting with the Board and without a vote of from a quorum of the Board.

79.    According to the Library By-Laws, as Library Director, Spratt's job duties included directing the work of Library staff.

80.     Spratt had been dealing with performance issues and personality conflicts stemming from the Library's Business Manager.

81.    Smith interceded repeatedly on behalf of the Business Manager, countering Spratt's instructions and discipline given to the Business Manager, and undermining Spratt's authority with the staff.

82.    In or about November of 2017, Ms. Spratt issued a write-up to the Business Manager for insubordination.  The next day Smith ordered Spratt to remove the write-up from the employee's file.

83.    In or about December 2017, Smith told Spratt she would give the Business Manager a raise and would not allow Spratt to receive a raise.

84.    On or about December 12, 2017, the Board approved a 12% raise for the Business Manager and denied a raise to Spratt, pending a performance evaluation.

85.    On or about January 16, 2018, Ms. Spratt reminded Board President Smith that she should not be involved in the day-to-day operation of the Library, which was Spratt's

11

responsibility to oversee. Ms. Spratt reminded Smith that the Board and the Board's attorney had similarly informed Smith that she was not to be involved in the day-to-day operation of the Library. She also cautioned Ms. Smith that by repeatedly interceding in Library staffing issues on behalf of the Business Manager, she was creating an appearance of favoritism that could undermine staff morale.

86.   On or about January 24, 2018, Ms. Spratt questioned why the Business Manager had altered the Board meeting minutes. The Business Manager stated that she had been directed to make the changes by Board President Smith.

87.   On the same day, Ms. Spratt spoke with Smith, who confirmed that she had directed the Business Manager to change the agenda at the suggestion of an attorney. Ms. Spratt asked Smith to speak directly to her about work assignments she wants the Business Manager to do; she reminded Smith that the Business Manager reported directly to Spratt and that Spratt was responsible for directing the Business Manager's work assignments.

88.   In or about February of 2018, then-Board President Smith falsely accused Ms. Spratt of stealing. Ms. Spratt refuted the charges and proved them to be false at a Board meeting where it was demonstrated she had simply made purchases on behalf of the Library and in compliance with the Board's approval.

89.   In or about February of 2018, Board President Smith again verbally accosted Ms. Spratt and attempted to prevent her from receiving any raise. All Library employees received a 3% raise. In addition, Ms. Spratt was ultimately granted a 1% raise over Smith's objections.

90.   On March 22, 2018, the Board gave Ms. Spratt a negative performance evaluation, which included many unsubstantiated and false criticisms. This was the first and only performance evaluation Ms. Spratt received during her tenure as Library Director. Smith would

not allow the review to consider any of Ms. Spratt's accomplishments that were more than a year old.

91.    As a part of this performance evaluation, Board President Smith stated that Ms. Spratt's position of Library Director had been contingent upon her earning her MLS degree.  Ms. Smith reiterated in a statement of goals and objectives for Spratt that her job remained contingent upon her obtaining the MLS degree and that she needed to do so within the current fiscal year.

92.    At the time, Ms. Spratt had resumed taking classes; however, since she had not yet earned an Associate's Degree, it would not be possible for her to achieve an MLS degree within the fiscal year.

93.    On or about March 29, 2018, Ms. Spratt announced her resignation, to be effective on April 6, 2018.

94.    On or about March 29, 2018, Ms. Spratt was constructively discharged.

95.    On April 2, 2018, the police escorted Ms. Spratt from the premises, the Board changed the locks to Ms. Spratt's office, and terminated her employment, effective immediately. On April 2, 2018, Defendant discharged Ms. Spratt.

96.    From 2015 through 2018, Ms. Spratt suffered a great deal of stress and distress from the Board's continuous pressure to make her engage in unlawful actions, repeated threats to terminate her, consistent criticism and false accusations, harassment, and obstructionism that damaged Ms. Spratt's ability to focus and caused her problems sleeping.

## COUNT I – ILLINOIS WHISTLEBLOWER ACT
## RETALIATION FOR DISCLOSURES (740 ILL. COMP. STAT. § 174/15(b)

97.    Plaintiff restates and incorporate Paragraphs 1 through 96 as though fully set forth herein.

98.   The IWA provides that "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."  740 IL Ill. Comp. Stat. § 175/15(b).

99.   Defendant, Bellwood Public Library, is a government agency.

100.  Plaintiff repeatedly disclosed to the Board of Trustees of the Library what she reasonably believed to be violations of law including, but not limited to, violations of the Illinois Open Meetings Act, Illinois Municipal Code, Illinois Local Library Act, and misappropriation or misuse of public funds.  As such, Plaintiff disclosed what she reasonably believed to be violations of law to a government agency.

101.  RAILS is a government agency.

102.  Plaintiff disclosed to RAILS what she reasonably believed to be violations of law including, but not limited to, the misappropriation or misuse of public funds and violations of the Local Library Act.

103.  The Illinois Attorney General's Office is a law enforcement agency.

104.  Plaintiff disclosed information to the Illinois Attorney General's Office regarding what she reasonably believed to be violations of law, including, but not limited to, violations of the Illinois Open Meetings Act.  As such, Plaintiff disclosed what she reasonably believed to be violations of law to a law enforcement agency.

105.  The Police are a law enforcement agency.

106.  On July 1, 2017, Plaintiff disclosed information to the police regarding what she reasonably believed to be a violation of law, including, but not limited to, the Illinois Open

Meetings Act and Municipal Code. As such, Plaintiff disclosed what she reasonably believed to be violations of law to a law enforcement agency.

107. Clements was present for Plaintiff's July 1, 2017 disclosure.

108. Defendant was aware of Plaintiff's multiple disclosures to government and law enforcement agencies.

109. Defendant retaliated against Plaintiff with harassment, negative reviews, forced administrative leave, legal action, public disparagement, altering her job responsibilities, removing job duties, constructive discharge, and discharge.

110. Defendant retaliated against Plaintiff for disclosing what she reasonably believed to be violations of law to a government agency and/or law enforcement agency, in violation of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. § 174/15.

WHEREFORE, Plaintiff Jacqueline Spratt, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant, the Bellwood Public Library and grant Plaintiff the following relief by awarding:

a) Reinstatement of employment, back pay, benefits, and any other statutory damages, as provided by 740 Ill. Comp. Stat. § 174/30;

b) Interest as provided by 740 Ill. Comp. Stat. § 174/30;

c) Compensatory damages including but not limited to damages for emotional distress as provided by 740 Ill. Comp. Stat. § 174/30;

d) Equitable damages for the purposes of making Plaintiff whole, including but not limited to front pay and lost future wages;

e) Reasonable attorney's fees and costs, as provided by 740 Ill. Comp. Stat. § 174/30; and

f) Any further relief that the Court deems just and equitable.

**COUNT II – ILLINOIS WHISTLEBLOWER ACT**
**RETALIATION FOR COURT DISCLOSURES (740 ILL. COMP. STAT. § 174/15(a))**

111. Plaintiff restates and incorporate Paragraphs 1 through 96 as though fully set forth herein.

112. The IWA provides that "[a]n employer may not retaliate against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 IL Ill. Comp. Stat. § 175/15(a).

113. On or about July 7, 2017 and July 8, 2017, Ms. Spratt reported to the Circuit Court of Cook County what she reasonably believed to be violations of the Open Meetings Act and Municipal Code in relation to hearings on a temporary restraining order.

114. Defendant retaliated against Plaintiff with harassment, negative reviews, public disparagement, altering her job responsibilities, removing job duties, constructive discharge, and discharge.

115. Defendant retaliated against Plaintiff for disclosing what she reasonably believed to be violations of law in a court proceeding, in violation of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. § 174/15(a).

WHEREFORE, Plaintiff Jacqueline Spratt, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant, the Bellwood Public Library and grant Plaintiff the following relief by awarding:

g)  Reinstatement of employment, back pay, benefits, and any other statutory damages, as provided by 740 Ill. Comp. Stat. § 174/30;

h)  Interest as provided by 740 Ill. Comp. Stat. § 174/30;

i)        Compensatory damages including but not limited to damages for emotional distress as provided by 740 Ill. Comp. Stat. § 174/30;

j)        Equitable damages for the purposes of making Plaintiff whole, including but not limited to front pay and lost future wages;

k)        Reasonable attorney's fees and costs, as provided by 740 Ill. Comp. Stat. § 174/30; and

l)        Any further relief that the Court deems just and equitable.

**COUNT III – ILLINOIS WHISTLEBLOWER ACT**
**RETALIATION FOR REFUSALS (740 ILL. COMP. STAT. § 174/20)**

88.      Plaintiff restates and incorporate Paragraphs 1 through 96 as though fully set forth herein.

89.      The IWA prohibits an employer from retaliating against an employee for "refusing to participate in an activity that would result in a violation of State or federal law, rule, or regulation, including, but not limited to, violations of the Freedom of Information Act." 740 Ill. Comp. Stat. § 174/20.

90.      Plaintiff repeatedly refused to engage in activities that would result in violations of law, including, but not limited to, violations of the Illinois Open Meetings Act, Illinois Municipal Code, Illinois Local Library Act, and misappropriation or misuse of public funds.

91.      Defendant retaliated against Plaintiff with harassment, negative reviews, forced administrative leave, legal action, public disparagement, altering her job responsibilities, removing job duties, constructive discharge, and discharge.

92.      Defendant retaliated against Plaintiff for refusing to engage in activities that would result in violations of law, in violation of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. § 174/20.

WHEREFORE, Plaintiff Jacqueline Spratt, respectfully requests that this Honorable

Court enter judgment in favor of Plaintiff and against Defendant, the Bellwood Public Library

and grant Plaintiff the following relief by awarding:

m)    Reinstatement of employment, back pay, benefits, and any other statutory damages, as provided by 740 Ill. Comp. Stat. § 174/30;

n)    Interest as provided by 740 Ill. Comp. Stat. § 174/30;

o)    Compensatory damages including but not limited to damages for emotional distress as provided by 740 Ill. Comp. Stat. § 174/30;

p)    Equitable damages for the purposes of making Plaintiff whole, including but not limited to front pay and lost future wages;

q)    Reasonable attorney's fees and costs, as provided by 740 Ill. Comp. Stat. § 174/30; and

r)    Any further relief that the Court deems just and equitable.

**COUNT IV – ILLINOIS WHISTLEBLOWER ACT**
**OTHER RETALIATION – PUBLIC CORRUPTION (740 ILL. COMP. STAT. § 174/20.1)**

93.    Plaintiff restates and incorporate Paragraphs 1 through 96 as though fully set forth

herein.

94.    The IWA prohibits "[a]ny other act or omission…whether within or without the

workplace, also constitutes retaliation by an employer…if the act or omission would be

materially adverse to a reasonable employee and is because of the employee disclosing or

attempting to disclose public corruption or wrongdoing."  740 Ill. Comp. Stat. § 174/20.1.

95.    Plaintiff repeatedly disclosed and attempted to disclose public corruption and

wrongdoing by the Defendant including, but not limited to, the misappropriation or misuse of

public funds, violations of the Illinois Open Meetings Act, violations of the Local Library Act,

violations of the Municipal Code, and undue and improper influence from unelected persons.

96.    Defendant retaliated against Plaintiff with harassment, negative reviews, forced

administrative leave, legal action, public disparagement, altering her job responsibilities,

removing job duties, constructive discharge, and discharge.

97.     Defendant retaliated against Plaintiff for disclosing and/or attempting to disclose public corruption or wrongdoing, in violation of 740 Ill. Comp. Stat. §174/20.1.

WHEREFORE, Plaintiff Jacqueline Spratt, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendant, the Bellwood Public Library and grant Plaintiff the following relief by awarding:

s)     Reinstatement of employment, back pay, benefits, and any other statutory damages, as provided by 740 Ill. Comp. Stat. §174/30;

t)     Interest as provided by 740 Ill. Comp. Stat. §174/30;

u)     Compensatory damages including but not limited to damages for emotional distress as provided by 740 Ill. Comp. Stat. §174/30;

v)     Equitable damages for the purposes of making Plaintiff whole, including but not limited to front pay and lost future wages;

w)     Reasonable attorney's fees and costs, as provided by 740 Ill. Comp. Stat. §174/30; and

x)     Any further relief that the Court deems just and equitable.

### COUNT V – AGE DISCRIMINATION IN EMPLOYMENT ACT RETALIATION FOR FILING CHARGE (29 U.S.C. § 623)

98.     Plaintiff restates and incorporates Paragraphs 1 through 96 as though fully set forth herein.

99.     The ADEA prevents employers from discriminating against an employee because she "has opposed any practice made an unlawful employment practice by [the ADEA], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]." 29 U.S.C. § 623(d).

100.     Plaintiff filed a charge of discrimination with the EEOC pursuant to the ADEA on June 15, 2017, which is a protected activity.

101.   Defendant unlawfully retaliated against Plaintiff for filing a charge of discrimination with the EEOC and pursuant to the ADEA.

102.   Defendant retaliated against Plaintiff with harassment, negative reviews, forced administrative leave, legal action, public disparagement, altering her job responsibilities, removing job duties, constructive discharge, and discharge.

103.   Defendant caused Plaintiff emotional distress.

104.   Defendant retaliated against Plaintiff in violation of the ADEA

WHEREFORE, Plaintiff, Jacqueline Spratt, respectfully requests that this Court enter an order as follows:

A. Declaring that the acts and practices by Defendant, as described herein, constitute a violation of ADEA;

B. Enjoining and permanently restraining these violations of ADEA;

C. Awarding Plaintiff back wages, front pay, and lost benefits due to Defendants' violation of ADEA;

D. Awarding Plaintiff compensatory damages, including damages for emotional distress;

E. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in connection with the instant action; and

F. Awarding Plaintiff such further and additional relief, including equitable damages, as the Court may deem just and proper.

**Plaintiff hereby requests a jury on all issues so triable.**

Dated: November 13, 2018

Respectfully submitted,
JACQUELINE SPRATT

Alejandro Caffarelli, #06239078
Alexis D. Martin, #06309619
Caffarelli & Associates, Ltd.
224 S. Michigan Ave., Suite 300
Chicago, Illinois 60604
Tel. (312) 763-6880

By: /s/ Alexis D. Martin
    Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a copy of the attached, **Plaintiff's First Amended Complaint** was served upon the parties below by electronically filing with the Clerk of the U.S. District Court of the Northern District of Illinois on November 13, 2018.

> Garth C.K. Madison (*garth.madison@cna.com*)
> Law Offices of Edward J. Kozel
> 333 S. Wabash Avenue, 25th Floor
> Chicago, Illinois 60604

> /s/ Alexis D. Martin
> Attorney for Plaintiff