UNITED STATES DISTRICT COURT
Northern District of Illinois
Eastern Division

| | | |
|---|---|---|
| JACQUELINE SPRATT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-CV-6573 |
| v. | ) | |
| | ) | Assigned Judge:  Sharon Johnson Coleman |
| BELLWOOD PUBLIC LIBRARY, | ) | |
| | ) | Designated |
| Defendant. | ) | Magistrate Judge:  Sheila M. Finnegan |

## BELLWOOD PUBLIC LIBRARY'S ANSWER TO FIRST AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES

NOW COMES the Defendant Bellwood Public Library, by and through its attorneys, Law Office of Edward J. Kozel, and for Answer to Plaintiff's First Amended Complaint at Law and Affirmative Defenses, states as follows:

### NATURE OF ACTION

1.      This is an action for damages and injunctive relief against Defendant Bellwood Public Library ("Library" or "Bellwood") for unlawful retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623, *et seq.,* as amended ("ADEA"), and unlawful retaliation in violation of the Illinois Whistleblower Act ("IWA"), 740 Ill. Comp. Stat. § 174/1 *et seq.*

**Answer to 1:  Defendant admits that Plaintiff has attempted to allege claims under the Illinois Whistleblower Act and Age Discrimination in Employment Act, but denies that she has stated a claim for which relief can be granted.**

### JURISDICTION AND VENUE

1

2.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 626 (right to civil action under ADEA). This Court has supplemental jurisdiction of Plaintiffs Illinois state law claims pursuant to 28 U.S.C. § 1367.

**Answer to 2: Denied. Answering further, Defendant states that Plaintiff has failed to state a cause of action pursuant to the Age Discrimination in Employment Act, and that this Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.**

3.    Defendant is located in Cook County, Illinois. Accordingly, venue in the Eastern Division of the U.S. District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

**Answer to 3: Admitted.**

4.    On June 15, 2017, Plaintiff filed a charge of discrimination with the EEOC, alleging discrimination in violation of the ADEA. On May 4, 2018, Spratt filed an Amended Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission (the "EEOC"), substantially describing the facts regarding recited herein, alleging unlawful retaliation in violation of the ADEA.

**Answer to 4: Defendant admits that on June 15, 2017 Plaintiff filed a charge of discrimination with the EEOC, attempting to state a claim for age discrimination under the ADEA, and filed an amended charge on May 4, 2018 to add a claim for retaliation. Defendant denies the remaining allegations in paragraph 4. Answering further, Defendant states that Plaintiff alleged in her EEOC charge that she was discriminated against because of her age, allegations she has now abandoned, and that in Plaintiff's Amended Complaint**

2

she has made allegations under state law and the Illinois Whistleblower Act that were not described in her EEOC charges.

5.      On August 20, 2018, the EEOC issued a Dismissal and Notice of Rights, a copy of which is attached as Exhibit A. This Complaint was filed within ninety days of Plaintiffs receipt of the Dismissal and Notice of Rights from the EEOC.

**Answer to 5:  Admitted.**

6.      Plaintiff has satisfied all conditions precedent to pursuing her claim under the ADEA.

**Answer to 6:  Denied. Answering further, Defendant states that Plaintiff failed to file a charge with the EEOC on the basis that she was discriminated against for filing her initial EEOC charge until her unrelated resignation almost one year later, more than 180 days after she alleges that she was discriminated against.**

PARTIES

7.      Defendant employed Ms. Spratt from on or about September 23, 1993 through on or about April 2, 2018.

**Answer to 7:  Admitted, except that Plaintiff's voluntary resignation was effective April 6, 2018 for purposes of final compensation.**

8.      Plaintiff was employed as the Library Director for Defendant from 2014 through the end of her employment.

**Answer to 8:  Admitted.**

9.      At all times relevant, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 630(f).

**Answer to 9:  Admitted.**

10.     At all times relevant, Plaintiff was an "employee" as defined by 740 Ill. Comp. Stat. § 174/5.

**Answer to 10:Admitted.**

11.     Defendant is a public library operated in the village of Bellwood, Illinois.

**Answer to 11:Admitted.**

12.     At all times relevant, Defendant was an "employer" within the meaning of 29 U.S.C. § 630(b).

**Answer to 12:Admitted.**

13.     At all times relevant, Defendant was an "employer" as defined by 740 Ill. Comp. Stat. § 174/5.

**Answer to 13:Admitted.**

14.     Oversight authority and control of the Library is entrusted to an elected Board of Trustees as defined by 75 Ill. Comp. Stat. § 5/1, *et seq*.

**Answer to 14:Defendant admits that the property, business, and policies of the Library are directed by the Board of Library Trustees of the Bellwood Public Library ("Board"), which is comprised of seven (7) members who serve without compensation and is a public board under the Illinois Local Library Act, 75 Ill. Comp. Stat. § 5/1, et seq., and further states that the provisions of that Act are self-explanatory. Defendant denies the remaining allegations in paragraph 14.**

## FACTUAL ALLEGATIONS

15.     Ms. Spratt worked for the Library from on or about September 23, 1993 through April 2, 2018.

**Answer to 15: Admitted, except that Plaintiff's voluntary resignation was effective April 6, 2018 for purposes of final compensation.**

16.     Throughout her employment with Defendant, Ms. Spratt performed her job satisfactorily.

**Answer to 16: Denied.**

17.     Beginning in 2014, Ms. Spratt was selected to serve as the Library Director for Defendant. Prior to becoming Library Director, Ms. Spratt had served as the Library's Head of Circulation.

**Answer to 17: Admitted. Answering further, Defendant states that the June 27, 2014 written offer of the Director position was expressly conditioned on Plaintiff obtaining a degree in Library Sciences (or a related field with Board approval), within four (4) years.**

18.     As Library Director, Ms. Spratt reported to Defendant's Board of Trustees ("Board").

**Answer to 18: Admitted.**

19.     In or about January of 2015, Mary Clements ("Clements") became the Board president.

**Answer to 19: Admitted.**

20.     On or about April 15, 2015, the Board held a special meeting. At the special meeting, Chuck Baxter ("Baxter") announced that he was the Public Affairs Consultant for the new majority of board members as of the April 7, 2015 election.

**Answer to 20: Denied.**

21.     During the meeting, the Board tried to assume control of hiring for the Library.

**Answer to 21: Denied. Answering further, Defendant states that Illinois statute grants control of hiring to the Board, as hiring and firing personnel is expressly made subject to Board approval by the Illinois Local Library Act. 75 Ill. Comp. Stat. Sec. 5/4-7(7).**

22.     Hiring and firing personnel was within Ms. Spratt's discretion pursuant to the Illinois Local Library Act. *See* 75 Ill. Comp. Stat. § 5/4-7(7).

**Answer to 22: Denied. Answering further, Defendant states that Plaintiff could only take actions in accordance with Board policy, and the Illinois Local Library Act expressly makes hiring and firing personnel subject to Board approval and Division 1 of Article 10 of the Illinois Municipal Code. 75 Ill. Comp. Stat. Sec. 5/4-7(7).**

23.     Following this meeting, and throughout the duration of Ms. Spratt's employment, the Board consistently tried to take control of the hiring process for the Library.

**Answer to 23: Denied. Answering further, Defendant states that hiring and firing personnel is expressly made subject to Board approval by the Illinois Local Library Act. 75 Ill. Comp. Stat. Sec. 5/4-7(7). Defendant further states that Plaintiff repeatedly failed and refused to inform the Board of hiring and firing actions as required under Library policies, the Director job description, and the Illinois Local Library Act.**

24.     Controlling the hiring for the Library would allow the Board greater access to the Library's resources, to engage in nepotistic hires irrespective of candidate qualifications, and provide jobs in return for favors.

**Answer to 24: Denied. Answering further, Defendant states that the Board has exclusive control of all library resources, as well as approval over all hiring and firing actions, pursuant to the Illinois Local Library Act, 75 Ill. Comp. Stat. § 5/4-7.**

25.     Also following this meeting, Baxter regular [sic] attended Board meetings and would provide instruction to Board members during the meetings via written notes, hand signals, and leaving the room to confer.

**Answer to 25:** **Defendant admits that Chuck Baxter attended some Board meetings, as noted in the public meeting minutes. Defendant denies the remaining allegations in paragraph 25.**

26.     On two occasions during 2015, Ms. Spratt contacted the Illinois State Library and reported that the Board was acting in violation of the Illinois Local Library Act by trying to assume control of hiring. However, Ms. Spratt was told that the Illinois State Library did not have jurisdiction over the actions of the Board.

**Answer to 26:** **Defendant admits that the Illinois State Library has no authority over the board of a local library. Defendant denies that it violated the Illinois Local Library Act, and denies that any reasonable cause existed to believe that such violations occurred. Answering further, Defendant states that hiring and firing personnel is expressly made subject to Board approval by the Illinois Local Library Act. 75 Ill. Comp. Stat. Sec. 5/4-7(7). Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 26.**

27.     On three occasions throughout 2015 and 2016, including on February 17, 2016, Ms. Spratt contacted Reaching Across Illinois Library Systems ("RAILS"). Ms. Spratt reported to RAILS that the Board was trying to hire Library staff members and asked for help in how to deal with the problem. RAILS shared Ms. Spratt's concerns and sent her a copy of the Illinois statute and materials to use in trying to convince the Board that they were stepping outside their role in attempting to control hiring.

**Answer to 27:** **Defendant denies that it violated the Illinois Local Library Act, and denies that any reasonable cause existed to believe that such violations occurred. Answering further, Defendant states that hiring and firing personnel is expressly made subject to Board approval by the Illinois Local Library Act. 75 Ill. Comp. Stat. Sec. 5/4-7(7). Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 27.**

28. At a Board meeting on March 9, 2016, Ms. Spratt shared the Illinois Local Library Act with Defendant to show that the Board was acting outside their scope of lawful authority by trying to take control of the Library hiring.

**Answer to 28:** **Denied. Answering further, Defendant states that Plaintiff repeatedly failed and refused to inform the Board of hiring and firing actions, in contravention of Board policy, the Director job description, and the Board's statutory powers under the Illinois Local Library Act to approve the hiring and firing of all Library personnel. 75 Ill. Comp. Stat. Sec. 5/4-7(7).**

29. In or about March of 2016, Ms. Spratt sought approval from the Board to remodel two public restrooms and masonry work done on the Library's storage building. The Board agreed, but wanted to go farther and approved remodeling for two additional bathrooms.

**Answer to 29:** **Defendant admits that during the Board meeting on March 9, 2016, Mr. Elliott reported that the exterior of the library wall had voids, cracks, crumbling mortar, or uneven areas of mortar, and that it was necessary to go out for bids to have the building properly repaired, including tuck-pointing the walls and looking at the condition of the chimney. Defendant further admits that it was reported during the March 9, 2016 Board meeting that the public restrooms on the main floor of the library were in desperate**

need of upgrades, and that the staff was regularly receiving complaints about the condition of the restrooms. Defendant denies the remaining allegations in paragraph 29.

30.     Ms. Spratt was to solicit bids for the remodeling work.

**Answer to 30: Defendant admits that Plaintiff was involved in obtaining bids or proposals for the remodeling work, and that Plaintiff reviewed the proposals and chose C J Rose to perform the work. Defendant denies the remaining allegations in paragraph 30.**

31.     Instead, the Board sought to hire Myron Adams of DK Environmental Services as a 'consultant' to oversee the project. Mr. Adams failed to present any proposal, references, or costs. Mr. Adams proposed additional costly and unnecessary actions.

**Answer to 31: Defendant admits that D.K. Environmental Services, Inc. discussed the condition of the bathrooms and tuck pointing at the library, and provided its experienced opinion to the Board free of charge. Defendant denies the remaining allegations in paragraph 31. Answering further, Defendant states that the Board has authority to retain professional consultants as needed, pursuant to Ill. Comp. Stat. § 5/4-7(7).**

32.     Ms. Spratt opposed hiring the consultant because it was an unnecessary cost and the Board had not even considered other bids. Ms. Spratt insisted that the Library needed to obtain bids for the project prior to hiring a consultant.

**Answer to 32: Defendant denies that it needed to obtain bids prior to hiring a consultant, and denies that D.K. Environmental Services, Inc. was retained as a consultant or charged any fees. Answering further, Defendant states that the Board has authority to retain professional consultants as needed, pursuant to Ill. Comp. Stat. § 5/4-7(7). Defendant denies that Plaintiff made any statements to the Board that D.K. Environmental Services,**

Inc. was an unnecessary cost, or that Defendant needed to obtain bids for consulting services. Answering further, Defendant states that Plaintiff asked about D.K. Environmental Services, Inc.'s involvement, and that the Board informed her of D.K. Environmental Services, Inc.'s contributions. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 32. Answering further, Defendant states that Plaintiff repeatedly refused to share information with or accept input from the Board regarding the remodeling project.

33.     The Illinois Local Library Act provides that the Board shall advertise for bids and award the contract to the lowest responsible bidder when the cost for constructions, repair, remodeling, or improvement will cost in excess of $25,000. 75 Ill. Comp. Stat. § 5/5-5.

**Answer to 33:** Defendant admits that Section 5/5-5 of the Illinois Local Library Act contains provisions providing for the Board to advertise for bids for certain expenditures where the estimated cost is in excess of $25,000, and states that the statute speaks for itself. Defendant denies the remaining allegations in paragraph 33.

34.     The bathroom remodeling ultimately cost approximately $50,000.

**Answer to 34:** Denied.

35.     At a board meeting on May 11, 2016, Ms. Spratt presented the Board with three contractor bids for the remodeling project. The Board instructed Ms. Spratt to arrange for the contractors to give presentations at the June 8, 2016 board meeting. However, on June 3, 2016, Clements removed the contractors' presentations from the agenda.

**Answer to 35:** Defendant admits that it reviewed and discussed tuck-pointing proposals from C J Rose & Sons, Inc., Lovitt & Sons, Inc., and Midland Masonry Inc. at the May 11, 2016 Board meeting. Defendant admits that Plaintiff participated in obtaining

the three contractor bids for the remodeling project. **Answering further, Defendant states that Plaintiff reviewed the proposals and chose C J Rose to perform the work. Defendant denies the remaining allegations in paragraph 35.**

36.     On or about May 16, 2016, the Board moved to conduct an evaluation of Ms. Spratt. However, the evaluation was never completed.

**Answer to 36: Defendant admits that it conducted an annual performance review of Plaintiff March 21-25, 2016. Defendant further states that Plaintiff was displeased with the evaluation, demanded to meet with each Board member, and refused to sign the evaluation or complete the evaluation process. Defendant denies the remaining allegations in paragraph 36.**

37.     On or about June 1, 2016, the Board held another special meeting and closed session. Ms. Spratt was not informed of the meeting and only learned of it because a library patron brought it to her attention.

**Answer to 37: Defendant admits that the Board held a special meeting, which included a closed session, on June 1, 2016. Defendant denies that Plaintiff was not informed of that meeting. Answering further, Defendant states that notice of the meeting was given as required by the Open Meetings Act, and that Plaintiff attended the meeting. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36. Answering further, Defendant states that Plaintiff repeatedly refused to add agenda items as requested by Board President Clements, refused to post agendas or upload them to the Library's website, canceled meetings scheduled by Board President Clements, removed agendas posted by Board President Clements, and posted her own different agendas.**

38.     At the June 1 meeting, Mr. Stuttley from Stuttley Group, LLC gave a presentation about potentially representing the Board to respond to a complaint that the Board had been operating in violation of the Illinois Open Meetings Act. Ms. Spratt then inquired about the legal fees and was told he billed at a rate of $495 per hour, but could be flexible. No specific fee was quoted for the Library. The Board did not seek or allow other bids.

**Answer to 38:** **Defendant admits that the June 1, 2016 meeting included a closed session convened to discuss and/or consider pending litigation and/or actions that were probable or imminent, pursuant to Section (c)(11) of the Open Meetings Act, and that during the public session the Board took action to hire the Stuttley Group, LLC as the Board's attorney. Answering further, Defendant states that the Board has authority to retain attorneys as needed, pursuant to Ill. Comp. Stat. § 5/4-7(7). The remaining allegations reference confidential information protected by the Open Meetings Act. Without waiving the confidentiality of this information, Defendant admits that the Stuttley Group, LLC, provided a proposal on June 1, 2016, to provide legal services, and denies the remaining allegations in paragraph 37.**

39.     On June 2, 2016, Ms. Spratt sent Clements a copy of the June Board Agenda for the scheduled meeting of June 8, 2016.

**Answer to 39:** **Denied. Answering further, Defendant states that no meeting was convened on June 8, 2016.**

40.     On June 3, 2016, Clements directed Ms. Spratt to remove reference to the attorneys' fees. Ms. Spratt had researched attorneys' fees and found that most attorneys who worked with libraries billed around $195.00 per hour, which she told Clements. Clements

warned Ms. Spratt that she would be insubordinate if she discussed the attorneys' fees at the public board meeting.

**Answer to 40:Defendant admits that Clements informed Plaintiff in or around June 2016 that the topic of the pending litigation was to be discussed during closed session pursuant to the Open Meetings Act. Answering further, Defendant states that no meeting was convened on June 8, 2016. Defendant lacks knowledge or information sufficient to form a belief as to Ms. Spratt's alleged research into attorneys' fees. Defendant denies the remaining allegations in paragraph 39.**

41.     The Stuttley Group ultimately billed the Library for approximately $11,017.50, which Ms. Spratt refused to pay without Board authorization.

**Answer to 41:Denied.**

42.     Throughout 2016, the Board consistently obstructed Ms. Spratt's ability to perform her job and criticized her both privately and publicly.

**Answer to 42:Denied.**

43.     At public meetings, the Board repeatedly attempted to shift all blame for public complaints on to Ms. Spratt.

**Answer to 43:Denied.**

44.     On March 3, 2017, Board member J.B. Carr ("Carr") tendered her resignation from the Board at a special meeting ("March 3rd Meeting").

**Answer to 44:Defendant admits that Carr's resignation was announced at the March 3rd meeting. Defendant denies the remaining allegations in paragraph 44.**

45.     Public notification of the March 3rd Meeting was posted less than 48 hours before the meeting was to take place, in violation of the Open Meetings Act, *5* Ill. Comp. Stat. § 120/2.02, *et seq*.

**Answer to 45: Denied.**

46.     Following announcement of her resignation, Carr, along with Board Members Clements, Regina Greene, and Sharon Tharpe, voted to appoint Gwendolyn Reese to Carr's vacant seat.

**Answer to 46: Defendant admits that Ms. Clements, Ms. Greene, and Ms. Tharpe voted to fill the vacant seat. Answering further, Defendant states that Ms. Carr abstained from voting on the motion. Defendant denies the remaining allegations in paragraph 45.**

47.     Ms. Spratt was also in attendance at the March 3rd Meeting and opposed the Board's unlawful actions in trying to appoint Reese. Ms. Spratt showed a Board attorney a copy of the statute in her effort to establish that the Board members were acting in violation of law and asked the attorney to uphold the law.

**Answer to 47: Defendant admits that Ms. Spratt was present at the March 3 meeting, continually interrupted the meeting by getting up from her seat and telling the Board they were doing something illegal, and asked the attorney to tell the Board its actions were not legal. Defendant further states that Ms. Spratt was allowed to participate in public comment, and that she stated during public comment that Ms. Carr should resign and the position be posted, and that Ms. Clements and Ms. Greene were not able to fill the position. Defendant denies the remaining allegations in paragraph 46.**

14

48.     Ms. Spratt opposed the action and declared it unlawful to the Board attorney and Board members because (a) the seat had to be declared vacant before it could be filled and (b) Tharpe was not a valid member, consequently the Board lacked a quorum.

**Answer to 48: Defendant lacks information or knowledge sufficient to form a belief as to the truth of Plaintiff's allegations regarding the reasons for her opposition to the action. Answering further, Defendant states that Ms. Spratt was present at the March 3 meeting, continually interrupted the meeting by getting up from her seat and telling the Board they were doing something illegal, and asked the attorney to tell the Board its actions were not legal. Defendant further states that Ms. Spratt was allowed to participate in public comment, and that she stated during public comment that Ms. Carr should resign and the position be posted, and that Ms. Clements and Ms. Greene were not able to fill the position. Defendant denies the remaining allegations in paragraph 46.**

49.     Ms. Spratt repeatedly refused to recognize Reese as a valid Board Member due to her unlawful appointment.

**Answer to 49: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 48.**

50.     Similarly, Ms. Spratt refused to recognize Tharpe as a valid Board Member because it was unlawful for her to hold the position.

**Answer to 50: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 49.**

51.     In 2002, Tharpe had been convicted in Cook County of arson with the intent to defraud an insurance company. Tharpe was sentenced to 24 months' probation for the felony conviction.

**Answer to 51:** **Upon information and belief, Defendant admits the allegations in paragraph 50.**

52.     In Illinois, a person is ineligible to hold elected municipal office if she "has been convicted in any court ... of any infamous crime, bribery, perjury, or other felony." 65 Ill. Comp. Stat.§ 5/3.1-10-5(b).

**Answer to 52:** **Admitted.**

53.     In addition, in 2017, despite ostensibly serving as a member of the Board for the Bellwood Public Library, Tharpe's official residence was in Chicago.

**Answer to 53:** **Upon information and belief, Defendant admits the allegations in paragraph 52.**

54.     In Illinois, "[a] person is not eligible an elective municipal office unless that person ... has resided in the municipality at least one year preceding the election or appointment ... " 65 Ill. Comp. Stat. §5/3.1-10-5(b).

**Answer to 54:** **Denied. Answering further, 65 Ill. Comp. Stat. Section 5/3.1-10-5(a) provides, "A person is not eligible for an elective municipal office unless that person is a qualified elector of the municipality and has resided in the municipality at least one year next preceding the electrion or appointment, except as provided in Section 3.1-20-25, subjection (b) of Section 3.1-25-75, Section 5-2-2, or Section 5-2-11."**

55.     Prior to the March 3rd Meeting, Ms. Spratt called Tharpe and informed her that she could not be on the Board because she was a convicted felon.

**Answer to 55:** **Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 54.**

56.     Following the March 3rd Meeting, Ms. Spratt emailed Mr. Stuttley to inform him that Tharpe, by law, could not serve as a member of the Board because of her conviction. Ms. Spratt did not receive a response.

**Answer to 56:Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 55.**

57.     Defendant also retained the Del Galdo Law Group, which billed the Library approximately $13,844.25. However, the group was retained at a meeting where Tharpe and Reese were required for a quorum. Ms. Spratt refused to recognize the meeting or its results because Tharpe and Reese were not lawful members of the Board.

**Answer to 57:Defendant admits that the Board lacked a quorum to retain the Del Galdo Group. Defendant denies that it retained the Del Galdo Group, and denies the remaining allegations in paragraph 56. Answering further, Defendant states that the Board has authority to retain attorneys as needed, pursuant to Ill. Comp. Stat. § 5/4-7(7).**

58.     In or about March 2017, a complaint was filed with the Office of the Attorney General's Public Access Counselor regarding Defendant's attempt to unlawfully appoint Reese to the Board.

**Answer to 58:Defendant admits that on March 6, 2017, Dorothy Clark-Smith, who was a member and Vice-President of the Board, opened a Request for Review with the Office of the Attorney General's Public Access Counselor pertaining to alleged Open Meetings Act violations related to the notice, agenda, and closed session recordings for the Board meeting held on Friday, March 3, 2017. Defendant denies the remaining allegations in paragraph 57.**

59.     In or about April of 2017, two members of the Illinois Attorney General's Office contacted Plaintiff regarding the complaint. Ms. Spratt answered their questions and reported her concerns regarding Defendant's violations of the Open Meetings Act and the unlawful appointment of Reese.

**Answer to 59: Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 58.**

60.     Throughout March, April, May, and June of 2017, Clements continued to harass Ms. Spratt and undermine her ability to perform her duties.

**Answer to 60: Denied.**

61.     On June 15, 2017, Plaintiff filed a Charge of Discrimination with the EEOC against Defendant.

**Answer to 61: Admitted.**

62.     On June 15, 2017, Ms. Spratt emailed the Board to inform them that she had filed a complaint with the EEOC and attached a copy of the filed Charge of Discrimination.

**Answer to 62: Admitted.**

63.     On June 29, 2017, several members of the Board convened a "special meeting" with only four of its members, including Clements, Janice English, Tharpe, and Reese. These four Board members voted to place Ms. Spratt on administrative leave in order to investigate her and determine if they would discipline or terminate her.

**Answer to 63: Admitted.**

64.     At the same meeting, these four Board members also voted to revoke Ms. Spratt's authority to fill recent vacancies and future positions at the Library.

**Answer to 64: Denied. Answering further, Defendant states that Plaintiff repeatedly refused to inform the Board of hiring and firing activity, and that hiring and firing personnel is expressly made subject to Board approval by the Illinois Local Library Act. 75 Ill. Comp. Stat. Sec. 5/4-7(7).**

65.     In violation of the Open Meetings Act, 5 Ill. Comp. Stat. § 120/2.02, *et seq.,* Clements posted notice of the June 29, 2017 meeting less [sic] 48 hours before the meeting was to be held.

**Answer to 65: Denied.**

66.     On June 30, 2017, Mr. Stuttley informed Ms. Spratt that she had been placed on an indefinite administrative leave, pending investigation to determine if disciplinary action against her was warranted. She was further advised that she could not go to the Library while on leave.

**Answer to 66: Defendant denies that the administrative leave was indefinite. Defendant admits the remaining allegations in paragraph 65.**

67.     Ms. Spratt refused to recognize the vote to place her on administrative leave or revoke her hiring authority because the vote was unlawful and void.

**Answer to 67: Defendant lacks information or knowledge to form a belief as to the truth of the allegations in paragraph 66.**

68.     On or about July 1, 2017, Ms. Spratt learned that Clements and Baxter had hired a locksmith to change the locks on Ms. Spratt's office in order to keep her out.

**Answer to 68: Defendant admits that a locksmith was scheduled to change the locks at the library, but that Plaintiff was present in the library and canceled the appointment. Although the locksmith was called to return, the locksmith ultimately declined to perform**

the work. Defendant lacks information or knowledge to form a belief as to the truth of the remaining allegations in paragraph 67.

69.     Ms. Spratt went to the Library to try to stop Clements from changing the lock. Clements then called the police to report Ms. Spratt. Ms. Spratt explained to the police that the meeting held on June 29, 2017 was unlawful and, consequently, Clements had no right to bar her from the premises. The Police prohibited Clements and Baxter from changing the locks and stated that they were required to have a court order to do so.

**Answer to 69:Defendant admits that a locksmith was scheduled to change the locks at the library, but that Plaintiff was present in the library and canceled the appointment. Although the locksmith was called to return, the locksmith ultimately declined to perform the work. Defendant denies the remaining allegations in paragraph 68.**

70.     On or about July 3, 2017, Clements, along with several other Board members, filed for a temporary restraining order ("TRO") against Ms. Spratt to prohibit her from going in to work at the Library.

**Answer to 70:Defendant admits that on or about July 5, 2017, it filed a motion for a temporary restraining order against Plaintiff enjoining her from entering onto library property. Defendant denies the remaining allegations in paragraph 69.**

71.     The Court initially entered the TRO, but then rescinded and struck it in its entirety on July 7, 2017. In overturning the TRO, the court found that Tharpe's seat on the Board was invalid; therefore, the decisions made at the June 29th meeting were made without a quorum and lacked authority.

**Answer to 71:Defendant admits that on July 6, 2017, the court entered an order requiring that Plaintiff stay away from library facilities. Defendant further admits that the**

**court entered an order on July 7, 2018 rescinding the temporary restraining order without prejudice, based on the unlikelihood of success on the merits and based on evidence submitted that one of the necessary votes on the Board was that of Sharon Tharpe, a convicted felon who did not have legal authority to vote on the matter. Defendant denies the remaining allegations in paragraph 71.**

72.     On multiple occasions throughout 2017, Ms. Spratt reported the Board's violations of the Open Meetings Act, Local Library Act, and attempts to misappropriate funds to other library directors throughout Illinois.

**Answer to 72: Defendant denies that it engaged in such violations, and denies that any reasonable cause existed to believe that such violations occurred. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 71.**

73.     On or about August 1, 2017, Spratt refused to issue payment on invoices from Stuttley Group and Del Galdo Group because they were retained without a quorum and relying on the support of Tharpe, whose position on the Board was unlawful.

**Answer to 73: Defendant admits that it, through its legal counsel, has disputed certain legal fees charged by the Stuttley Group and Del Galdo Law Group, and that it has not paid those fees. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 74.**

74.     On or about August 2, 2017, Clements ordered Spratt to pay the Stuttley and Del Galdo invoices, which Spratt again refused to do without a lawful vote from the Board.

**Answer to 74:** **Denied. Answering further, Defendant states that it disputed certain legal fees charged by the Stuttley Group and Del Gado Law Group, and has not paid those fees.**

75.    On or about September 12, 2017, Smith was appointed the new Board President.

**Answer to 75:** **Admitted.**

76.    On or about September 14, 2017, then-Board President Smith told Ms. Spratt that it was a problem that Spratt had not yet obtained a Master of Library Science ("MLS") degree. At the time, Ms. Spratt was hired to be the Library Director, it had been discussed that she would work to obtain her MLS degree. Ms. Spratt explained to Smith that the additional burdens and time-commitments she had been forced to expend in dealing with the Board's unlawful and unethical actions over the preceding years had made it infeasible for her to complete the degree in that time. Smith informed Spratt that the issue would be addressed in future Board meetings.

**Answer to 76:** **Defendant admits that the June 27, 2014 offer of the Director position was expressly conditioned on Plaintiff obtaining a degree in Library Sciences (or a related field with Board approval), within four (4) years. Defendant admits that at various times between 2014 and 2018 the Board indicated to Plaintiff that she needed to work towards obtaining a degree, as she had promised to do when she agreed to accept the position. Defendant denies the remaining allegations in paragraph 76. Answering further, Defendant states that in 2014, 2015, and 2016, Plaintiff took classes at DuPage College, and received reimbursement from Defendant for tuition costs, but at some point chose to stop taking classes. Defendant had not obtained her degree and had refused to provide a plan or time frame to obtain her degree prior to choosing to voluntarily resign.**

77.     No one had discussed Spratt obtaining an MLS degree once she had been hired to the Library Director position.

**Answer to 77: Denied. Answering further, Defendant states that at various times between 2014 and 2018, the Board indicated to Plaintiff that she needed to work towards obtaining a degree, as she had promised to do when she agreed to accept the position. Defendant further states that in 2014, 2015, and 2016, Plaintiff took classes at DuPage College, and received reimbursement from Defendant for tuition costs, but at some point chose to stop taking classes. Defendant had not obtained her degree and had refused to provide a plan or time frame to obtain her degree prior to choosing to voluntarily resign.**

78.     After becoming Board President, Smith began calling Spratt on a near daily basis, including after work hours and on the weekends. Smith began to insert herself into the day-to-day operations of the Library, including overseeing and directing the work of Library staff. Similar to Board President Clements, Smith began ordering Spratt to take actions without first consulting with the Board and without a vote from a quorum of the Board.

**Answer to 78: Denied. Answering further, Defendant states that the Board has ultimate authority over and responsibility for all Library operations, pursuant to the Illinois Local Library Act, 735 Ill. Comp. Stat. Sec. 5/4-7. Defendant further states that the Library Director must follow Board policies in taking any action, pursuant to Library policies and the Director job description. Defendant further states that Plaintiff repeatedly refused to provide information to or cooperate with the Board.**

79.     According to the Library By-Laws, as Library Director, Spratt's job duties included directing the work of Library staff.

**Answer to 79:** Defendant admits that the duties of the Library Director, as set forth in the Library By-Laws, as approved and adopted on January 30, 2018, include administering the policies adopted by the Board, including directing and supervising all staff members in accordance with the policies prescribed by the Board. Defendant denies the remaining allegations in paragraph 79.

80.     Spratt had been dealing with performance issues and personality conflicts stemming from the Library's Business Manager.

**Answer to 80:** Denied.

81.     Smith interceded repeatedly on behalf of the Business Manager, countering Spratt's instructions and discipline given to the Business Manager, and undermining Spratt's authority with the staff.

**Answer to 81:** Denied.

82.     In or about November of 2017, Ms. Spratt issued a write-up to the Business Manager for insubordination. The next day Smith ordered Spratt to remove the write-up from the employee's file.

**Answer to 82:** Denied.

83.     In or about December 2017, Smith told Spratt she would give the Business Manager a raise and would not allow Spratt to receive a raise.

**Answer to 83:** Denied.

84.     On or about December 12, 2017, the Board approved a 12% raise for the Business manager and denied a raise to Spratt, pending a performance evaluation.

**Answer to 84:** Denied.

85.     On or about January 6, 2018, Ms. Spratt reminded Board President Smith that she should not be involved in the day-to-day operation of the Library, which was Spratt's responsibility to oversee. Ms. Spratt reminded Smith that the Board and the Board's attorney had similarly informed Smith that she was not to be involved in the day-to-day operation of the Library. She also cautioned Ms. Smith that by repeatedly interceding in Library staffing issues on behalf of the Business Manager, she was creating an appearance of favoritism that could undermine staff morale.

**Answer to 85: Denied. Answering further, Defendant states that the Board has ultimate authority over and responsibility for all Library operations, pursuant to the Illinois Local Library Act, 735 Ill. Comp. Stat. Sec. 5/4-7. Defendant further states that the Library Director must follow Board policies in taking any action, pursuant to Library policies and the Director job description. Defendant further states that Plaintiff repeatedly refused to provide information to or cooperate with the Board.**

86.     On or about January 24, 2018, Ms. Spratt questioned why the Business Manager had altered the Board meeting minutes. The Business Manager stated that she had been directed to make the changes by Board President Smith.

**Answer to 86: Denied.**

87.     On the same day, Ms. Spratt spoke with Smith, who confirmed that she had directed the Business Manager to change the agenda at the suggestion of an attorney. Ms. Spratt asked Smith to speak directly to her about work assignments she wants the Business Manager to do; she reminded Smith that the Business Manager reported directly to Spratt and that Spratt was responsible for directing the Business Manager's work.

**Answer to 87: Denied.**

88.     In or about February of 2018, then-Board President Smith falsely accused Ms. Spratt of stealing. Ms. Spratt refuted the charges and proved them to be false at a Board meeting where it was demonstrated she had simply made purchases on behalf of the Library and in compliance with the Board's approval.

**Answer to 88: Defendant admits that at the Board meeting on February 20, 2018, Board President Dorothy Clark-Smith asked Plaintiff for information about a large payment of $11,672.78, and that Plaintiff produced credit card statements with receipts. Defendant denies the remaining allegations in paragraph 72. Answering further, Defendant states that the Board and Board President have the responsibility to oversee all expenditures of Library funds pursuant to the Illinois Local Library Act. 75 Ill. Comp. Stat. Sec. 5/3-5.**

89.     In or about February of 2018, Board President Smith again verbally accosted Ms. Spratt and attempted to prevent her from receiving any raise. All library employees received a 3$ raise. In addition, Ms. Spratt was ultimately granted a 1 % raise over Smith's objections.

**Answer to 89: Defendant admits that Plaintiff and all other library employees were granted a 3% raise for 2018, and that Plaintiff was subsequently granted an additional 1% raise retroactive to January 2018, following her annual performance evaluation by the Board. Defendant denies the remaining allegations in paragraph 73. Answering further, Defendant states that Plaintiff had been giving herself the same raise as all other Library employees every year, without the required annual Board vote on her compensation.**

90.     On March 16, 2018, the Board amended section 2.3.5 of the Board of Library Trustee Policy Manual to read: "The board of trustees should hire a skilled library director whose

qualifications should include a Master of Library Science from an ALA accredited program or a reasonable prospect of being conferred with such a degree."

**Answer to 90:Admitted. Answering further, Defendant states that the June 27, 2014 written offer to Plaintiff of the Director position was expressly conditioned on Plaintiff obtaining a degree in Library Sciences (or a related field with Board approval), within four (4) years.**

91.    On March 22, 2018, the Board gave Ms. Spratt a negative performance evaluation, which included many unsubstantiated and false criticisms. This was the first and only performance evaluation Ms. Spratt received during her tenure as Library Director. Smith would not allow the review to consider any of Ms. Spratt's accomplishments that were more than a year old.

**Answer to 91:Defendant admits that a performance evaluation of Plaintiff was completed on March 16, 2018. Defendant denies the remaining allegations in paragraph 74, including the allegation that the performance evaluation was "negative." Answering further, Defendant states that Board President Dorothy Clark-Smith provided a letter to Plaintiff on March 22, 2018 reiterating the goals and objectives for Plaintiff to work on during the fiscal year 2018-2019, and requesting that Plaintiff provide a reasonable time table or time frame with regard to her plans to obtain the academic credentials required for the Director position.**

92.    As part of the performance evaluation, Board President Smith stated that Ms. Spratt's position of Library Director had been contingent upon her earning her MLS degree. Ms. Smith reiterated in a statement of goals and objections for Spratt that her job remained

contingent upon her obtaining the MLS degree and that she needed to do so within the current fiscal year.

**Answer to 92: Defendant admits that Board President Dorothy Clark-Smith provided a letter to Plaintiff on March 22, 2018 reiterating the goals and objectives for Plaintiff to work on during the fiscal year 2018-2019, and requesting that Plaintiff provide a reasonable time table or time frame with regard to her plans to obtain the academic credentials required for the Director position. Defendant denies the remaining allegations in paragraph 91, including the allegation that Ms. Smith set a specific deadline by which Plaintiff was required to obtain her degree. Answering further, Defendant states that Plaintiff failed to provide a plan or time frame, and instead chose to voluntarily resign.**

93.    At the time, Ms. Spratt had resumed taking classes; however, since she had not yet earned an Associate's Degree, it would not be possible for her to achieve an MLS degree within the fiscal year.

**Answer to 93: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92. Answering further, Defendant states that Plaintiff failed to respond to the Smith's March 22, 2018 letter, failed to inform the Board with regard to any efforts she was or would be making towards taking classes or achieving the degree required for the position, made a condition precedent of offering her the position in 2014, and which Plaintiff herself promised to obtain, and failed to provide the requested time table or time frame with regard to her plans to obtain the required academic credentials. Instead, Plaintiff unilaterally and voluntarily chose to resign on or about March 29, 2018. Defendant further states that in 2014, 2015, and 2016, Plaintiff took classes at DuPage College, and received reimbursement from Defendant for tuition costs,**

but at some point stopped taking classes, and did not request reimbursement for tuition after 2016.

94.     On or about March 29, 2018, Ms. Spratt announced her resignation, to be effective on April 6, 2018.

**Answer to 94: Admitted. Answering further, Defendant states that Plaintiff initially announced her resignation to the media without informing the Board, and that Plaintiff refused to provide a written resignation to the Board.**

95.     On or about March 29, 2018, Ms. Spratt was constructively discharged.

**Answer to 95: Denied.**

96.     On April 2, 2018, the police escorted Ms. Spratt from the premises, the Board changed the locks to Ms. Spratt's office, and terminated her employment, effective immediately. On April 2, 2018, Defendant discharged Ms. Spratt.

**Answer to 96: Defendant admits that the Board accepted Plaintiff's voluntary resignation at its meeting on April 2, 2018. Defendant denies the remaining allegations in paragraph 78. Answering further, Defendant states that for purposes of final compensation, the effective date of Plaintiff's resignation was April 6, 2018. Defendant further states that Plaintiff initially announced her resignation to the media without informing the Board, and that Plaintiff refused to provide a written resignation to the Board. Defendant further states that, after announcing her resignation, Plaintiff entered the Library premises over the holiday weekend March 30-April 2, and improperly removed Library property, including her work computer, from the Library premises.**

97.     From 2015 through 2018, Ms. Spratt suffered a great deal of stress and distress from the Board's continuous pressure to make her engage in unlawful actions, repeated threats to

terminate her, consistent criticism and false accusations, harassment, and obstructionism that damaged Ms. Spratt's ability to focus and caused her problems sleeping.

**Answer to 97: Denied.**

## COUNT I- ILLINOIS WHISTLEBLOWER ACT
## RETALIATION FOR DISCLOSURES (740 ILL. COMP. STAT.§ 174/lS(b)

98. Plaintiff restates and incorporate Paragraphs 1 through 96 as though fully set forth herein.

**Answer to 98: Defendant restates and incorporates its answers to paragraphs 1 through 97 as though fully set forth herein.**

99. The IWA provides that "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 IL Ill. Comp. Stat. § 175/15(b).

**Answer to 99: Denied. Answering further, Defendant states that this is the text of 740 Ill. Comp. Stat. Section 174/15.**

100. Defendant, Bellwood Public Library, is a government agency.

**Answer to 100: Admitted.**

101. Plaintiff repeatedly disclosed to the Board of Trustees of the Library what she reasonably believed to be violations of law including, but not limited to, violations of the Illinois Open Meetings Act, Illinois Municipal Code, Illinois Local Library Act, and misappropriation or misuse of public funds. As such, Plaintiff disclosed what she reasonably believed to be violations of law to a government agency.

**Answer to 101: Denied.**

102. RAILS is a government agency.

**Answer to 102:** **Admitted.**

103.    Plaintiff disclosed to RAILS what she reasonably believed to be violations of law including, but not limited to, the misappropriation or misuse of public funds and violations of the Local Library Act.

**Answer to 103:** **Defendant denies that it violated the laws alleged, and denies that any reasonable cause existed to believe that such violations occurred. Defendant lacks information or knowledge to form a belief as to the truth of the remaining allegations in paragraph 103.**

104.    The Illinois Attorney General's Office is a law enforcement agency.

**Answer to 104:** **Admitted.**

105.    Plaintiff disclosed information to the Illinois Attorney General's Office regarding what she reasonably believed to be violations of law, including, but not limited to, violations of the Illinois Open Meetings Act. As such, Plaintiff disclosed what she reasonably believed to be violations of law to a law enforcement agency.

**Answer to 105:** **Defendant denies that it violated the laws alleged, and denies that any reasonable cause existed to believe that such violations occurred. Defendant lacks information or knowledge to form a belief as to the truth of the remaining allegations in paragraph 105. Answering further, Defendant states that board member Dorothy Clark Smith, not Plaintiff, opened the Request for Review with the Office of the Attorney General's Public Access Counselor pertaining to alleged Open Meetings Act violations.**

106.    The Police are a law enforcement agency.

**Answer to 106:** **Admitted.**

107.    On July 1, 2017, Plaintiff disclosed information to the police regarding what she reasonably believed to be a violation of law, including, but not limited to, the Illinois Open Meetings Act and Municipal Code. As such, Plaintiff disclosed what she reasonably believed to be violations of law to a law enforcement agency.

**Answer to 107:        Defendant denies that it violated the laws alleged, and denies that any reasonable cause existed to believe that such violations occurred. Defendant lacks information or knowledge to form a belief as to the truth of the remaining allegations in paragraph 107.**

108.    Clements was present for Plaintiff's July 1, 2017 disclosure.

**Answer to 108:        Denied.**

109.    Defendant was aware of Plaintiffs multiple disclosures to government and law enforcement agencies.

**Answer to 109:        Denied.**

110.    Defendant retaliated against Plaintiff with harassment, negative reviews, forced administrative leave, legal action, public disparagement, constructive discharge, and discharge.

**Answer to 110:        Denied.**

111.    Defendant retaliated against Plaintiff for disclosing what she reasonably believed to be violations of law to a government agency and/or law enforcement agency, in violation of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. § 174/15.

**Answer to 111:        Denied.**

**COUNT II- ILLINOIS WHISTLEBLOWER ACT**
**RETALIATION FOR COURT DISCLOSURES (740 ILL. COMP. STAT.§ 174/lS(a))**

112.    Plaintiff restates and incorporate Paragraphs 1 through 97 as though fully set forth herein.

**Answer to 112:** **Defendant restates and incorporates its answers to paragraphs 1 through 97 as though fully set forth herein.**

113.    The IWA provides that "[a]n employer may not retaliate against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 IL Ill. Comp. Stat. § 175/l5(a).

**Answer to 113:** **Denied. Answering further, Defendant states that this is the text of 740 Ill. Comp. Stat. Section 174/15(a).**

114.    On or about July 7, 2017 and July 8, 2017, Ms. Spratt reported to the Circuit Court of Cook County what she reasonably believed to be violations of the Open Meetings Act and Municipal Code in relation to hearings on a temporary restraining order.

**Answer to 114:** **Defendant admits that Plaintiff argued to the court that a proper quorum of the board was not present at the meeting during which Plaintiff was placed on administrative leave, in responding to Defendant's July 2017 motion for a temporary restraining order. Defendant denies the remaining allegations in paragraph 95.**

115.    Defendant retaliated against Plaintiff with harassment, negative reviews, public disparagement, altering her job responsibilities, removing job duties, constructive discharge, and discharge.

**Answer to 115:** **Denied.**

116.    Defendant retaliated against Plaintiff for disclosing what she reasonably believed to be violations of law in a court proceeding, in violation of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. § 174/15(a).

**Answer to 116:** **Denied.**

### COUNT III - ILLINOIS WHISTLEBLOWER ACT
### RETALIATION FOR REFUSALS (740 ILL. COMP. STAT.§ 174/20)

117. Plaintiff restates and incorporate Paragraphs 1 through 96 as though fully set fort

**Answer to 117:** **Defendant restates and incorporates its answers to paragraphs 1 through 96 as though fully set forth herein.**

118. The IWA prohibits an employer from retaliating against an employee for "refusing to participate in an activity that would result in a violation of State or federal law, rule, or regulation, including, but not limited to, violations of the Freedom of Information Act." 740 Ill. Comp. Stat. § 174/20.

**Answer to 118:** **Admitted.**

119. Plaintiff repeatedly refused to engage in activities that would result in violations of law, including, but not limited to, violations of the Illinois Open Meetings Act, Illinois Municipal Code, Illinois Local Library Act, and misappropriation or misuse of public funds.

**Answer to 119:** **Denied. Answering further, Defendant states that Plaintiff repeatedly removed notices and agendas posted by the Board and refused to prepare or circulate agendas for Board meetings, and that Plaintiff participated in the process of obtaining bids for work to be performed on the library in 2016.**

120. Defendant retaliated against Plaintiff with harassment, negative reviews, forced administrative leave, legal action, public disparagement, altering her job responsibilities, removing job duties, constructive discharge, and discharge.

**Answer to 120:** **Denied.**

121.    Defendant retaliated against Plaintiff for refusing to engage in activities that would result in violations of law, in violation of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. § 174/20.

**Answer to 121:      Denied.**

## COUNT IV - ILLINOIS WHISTLEBLOWER ACT
## OTHER RETALIATION-PUBLIC CORRUPTION (740 ILL. COMP. STAT.§ 174/20.1)

122.    Plaintiff restates and incorporate Paragraphs 1 through 96 as though fully set forth herein.

**Answer to 122:       Defendant restates and incorporates its answers to paragraphs 1 through 96 as though fully set forth herein.**

123.    The IWA prohibits "[a]ny other act or omission ... whether within or without the workplace, also constitutes retaliation by an employer ... if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 Ill. Comp. Stat. § 174/20.1.

**Answer to 123:       Admitted.**

124.    Plaintiff repeatedly disclosed and attempted to disclose public corruption and wrongdoing by the Defendant including, but not limited to, the misappropriation or misuse of public funds, violations of the Illinois Open Meetings Act, violations of the Local Library Act, violations of the Municipal Code, and undue and improper influence from unelected persons.

**Answer to 124:       Denied. Answering further, Defendant states that Plaintiff repeatedly refused to add agenda items, refused to prepare or post agendas or upload them to the Library's website, canceled meetings scheduled by the Board President, removed notices and agendas, and posted her own different agendas. Defendant further states that**

**Plaintiff participated in the process of obtaining proposals and selecting a contractor for**

**the construction or remodeling work to be performed on the Library in 2016.**

125.    Defendant retaliated against Plaintiff with harassment, negative reviews, forced

administrative leave, legal action, public disparagement, altering her job responsibilities,

removing job duties, constructive discharge, and termination.

> **Answer to 125:        Denied.**

126.    Defendant retaliated against Plaintiff for disclosing and/or attempting to disclose

public corruption or wrongdoing, in violation of 740 Ill. Comp. Stat. §174/20.1.

> **Answer to 126:        Denied.**

> ### COUNT V - AGE DISCRIMINATION IN EMPLOYMENT ACT
> ### RETALIATION FOR FILING CHARGE (29 U.S.C. § 623)

127.    Plaintiff restates and incorporates Paragraphs 1 through 97 as though fully set

forth herein.

> **Answer to 127:        Defendant restates and incorporates its answers to paragraphs**
> **1 through 97 as though fully set forth herein.**

128.    The ADEA prevents employers from discriminating against an employee because

she "has opposed any practice made an unlawful employment practice by [the ADEA], or

because [she] has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or litigation under [the ADEA]." 29 U.S.C. § 623(d).

> **Answer to 128:        Denied. The text of this statutory provision reads, "It shall be**
> **unlawful for an employer to discriminate against any of his employees or applicants for**
> **employment, for an employment agency to discriminate against any individual, or for a**
> **labor organization to discriminate against any member thereof or applicant for**
> **membership, because such individual, member or applicant for membership has opposed**

**any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. Sec. 623(d).**

129.    Plaintiff filed a charge of discrimination with the EEOC pursuant to the ADEA on June 15, 2017, which is a protected activity.

**Answer to 129:        Admitted.**

130.    Defendant unlawfully retaliated against Plaintiff for filing a charge of discrimination with the EEOC and pursuant to the ADEA.

**Answer to 130:        Denied.**

131.    Defendant retaliated against Plaintiff with harassment, negative reviews, forced administrative leave, legal action, public disparagement, altering her job responsibilities, removing job duties, constructive discharge, and termination.

**Answer to 131:        Denied.**

132.    Defendant caused Plaintiff emotional distress.

**Answer to 132:        Denied.**

133.    Defendant retaliated against Plaintiff in violation of the ADEA

**Answer to 133:        Denied.**

## AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative defenses to Plaintiff's Complaint, in the alternative and without prejudice to its answers to Plaintiff's Complaint above or to its other affirmative defenses, and Defendant expressly reserves the right to supplement and assert

additional affirmative defenses available under the law should additional information be discovered.

## Affirmative Defense 1 – IWA Constructive Discharge

1. Defendant did not engage in any conduct that would violate the Illinois Public Library Act or the Open Meetings Act, or any other law as alleged in Plaintiff's complaint.

2. There can be no reasonable cause to believe that Defendant's conduct would constitute such violations.

3. Plaintiff failed to report any such violations to a government or law enforcement agency.

4. Defendant had no knowledge of Plaintiff's alleged disclosures or reports under the Illinois Whistleblower Act in 2015 through 2017.

5. Plaintiff participated in the conduct of which she complains, including posting and removing agendas and notices of meetings, and soliciting bids from contractors.

6. Defendant did not terminate or otherwise retaliate or take any tangible employment action against Plaintiff.

7. Plaintiff voluntarily resigned on or about April 2, 2018.

8. Plaintiff's resignation was unrelated to her alleged whistleblower activities or any refusal to participate in illegal activities, and cannot constitute constructive discharge under the Illinois Whistleblower Act.

9. As a result, Plaintiff's Complaint is barred in whole or in part.

## Affirmative Defense 2 – Non-Retaliatory/Non-Discriminatory Reasons

10. Plaintiff failed to perform her job duties satisfactorily.

11.     Plaintiff engaged in insubordinate activity, including removing notices and agendas for Board meetings posted by Board members, disregarding Board members, and disrupting Board meetings.

12.     Defendant's June 27, 2014 offer of the Director position to Plaintiff was expressly conditioned on Plaintiff obtaining a degree in Library Sciences (or a related field with Board approval), within four (4) years.

13.     Plaintiff failed to fulfill the requirements for the Director job, including obtaining a degree in Library Sciences or a related field.

14.     Defendant had valid, non-retaliatory and non-discriminatory reasons to terminate, discipline, or otherwise take action against Plaintiff.

15.     Plaintiff cannot establish that Defendant's reasons for its actions were a pretext for discrimination or retaliation.

16.     As a result, Plaintiff's Complaint is barred in whole or in part.

**Affirmative Defense 3 – After Acquired Evidence**

17.     During the holiday weekend of March 30 through April 2, 2018, Plaintiff improperly removed Library property and records, including her work computer, from the Library premises after announcing her voluntary resignation.

18.     Defendant discovered Plaintiff's conduct soon after her voluntary resignation.

19.     After-acquired evidence of Plaintiff's wrongdoing establishes valid, non-retaliatory reasons to terminate, discipline, or otherwise take action against Plaintiff.

20.     As a result, Plaintiff's Complaint is barred in whole or in part.

**Affirmative Defense 4 – ADEA Claim Time Barred**

21.    Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on June 15, 2017.

22.    Plaintiff alleges that she was discriminated against after June 15, 2017, because she filed the charge.

23.    Plaintiff voluntarily resigned on or about April 2, 2018, almost ten months later and more than 180 days after such retaliatory or discrimination allegedly occurred.

24.    Plaintiff failed to file a charge for retaliation or discrimination related to her filing the EEOC charge on June 15, 2017 until May 4, 2018, over ten months later and more than one hundred and eighty days after such retaliation or discrimination allegedly occurred.

25.    Plaintiff's claim under the Age Discrimination in Employment Act is time barred pursuant to 42 U.S.C. Section 2000e-5(e).

**Affirmative Defense 5 – Supplemental Jurisdiction**

26.    Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on June 15, 2017.

27.    Defendant did not terminate or otherwise retaliate or take any tangible employment action against Plaintiff.

28.    Plaintiff voluntarily resigned on or around March 29 through April 6, 2018.

29.    Plaintiff's resignation is unrelated to her filing of the charge approximately ten months earlier.

30.    Plaintiff's resignation was unrelated to her charge of discrimination, and cannot constitute constructive discharge under the Age Discrimination in Employment Act.

31.     In the absence of an ADEA claim, this court should decline to exercise supplemental jurisdiction over Plaintiff's Illinois state law claims pursuant to 28 U.S.C. Section 1367.

32.     As a result, Plaintiff's Complaint is barred in whole or in part.

**Affirmative Defense 6 – Illinois State Law Claims Time Barred**

33.     Plaintiff's alleged whistleblowing activities and the alleged illegal conduct of Defendant upon which those whistleblowing activities are based occurred between April 2015 and July 2017.

34.     Plaintiff filed the present suit on September 28, 2018, more than one year later.

35.     Plaintiff's claims are time barred under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, requiring actions against local public entities to be filed within one year (735 Ill. Comp. Stat. Sec. 8-101).

**Affirmative Defense 7 – Injunctive/Equitable Relief**

36.     The Board has sole authority under the Illinois Local Library Act to appoint a qualified librarian to Plaintiff's former Director position. 735 Ill. Comp. Stat. Sec. 5/4-7(7).

37.     The Illinois Local Library Act provides for a public library's board to sue and be sued by the name and style of "The Board of Library Trustees of the (city, village, incorporated town or township) of …." 735 Ill. Comp. Stat. 5/4-7(10).

38.     Plaintiff has failed to name the Board as a party to this action.

39.     Plaintiff has adequate and complete remedy at law.

40.     Plaintiff's prayer for reinstatement of employment, or for other injunctive or equitable relief is barred.

WHEREFORE, the Defendant, Bellwood Public Library, respectfully requests that Plaintiff's action be dismissed with prejudice, that Plaintiff take nothing from this action, and that the Court award the Defendant its attorney's fees and costs, and such other relief as the Court deems just and reasonable.

**Defendant hereby requests a jury on all issues so triable.**

Dated: December 11, 2018          Respectfully submitted,

BELLWOOD PUBLIC LIBRARY

By: /s/ *Garth C.K. Madison*

One of its Attorneys

Garth C.K. Madison – ARDC#6281959
Law Offices of Edward J. Kozel
333 S. Wabash Ave., 25th Floor
Chicago, IL 60604
(312) 822-3350 Main
(312) 822-4052 Direct
(312) 817-1978 Fax
garth.madison@cna.con

**CERTIFICATE OF LAWYER AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

On December 11, 2018, an Answer to Plaintiff's First Amended Complaint and Affirmative Defenses was electronically filed with the District Court Clerk via CM/ECF filing system.

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, the undersigned further certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

By: /s/ *Garth C.K. Madison*

One of the Attorneys for Defendant,
Bellwood Public Library

Garth C.K. Madison – ARDC#6281959
Law Offices of Edward J. Kozel
333 S. Wabash Ave., 25th Floor
Chicago, IL 60604
(312) 822-3350 Main
(312) 822-4052 Direct
(312) 817-1978 Fax
garth.madison@cna.con